THE STATE v. W. T. EWING and D. A. EWING.

*Landlord and Tenant—Unlawful Seizure of Crop—Special Verdict.*

1. To constitute the offence of an unlawful seizure of crops by the land-lord, under *The Code*, § 1759, it is not essential that the landlord should take forcible or even manual possession of them—the offence will complete if he exercises that possession or control which prevents the tenant from gathering and removing his crop in a peaceable manner.

2. The fact that the jury, in a criminal action, specially found the facts and submitted them to the Court for an opinion as to whether they should acquit or convict, and the Court being of the opinion that the defendants were not guilty thereon so adjudged and directed a verdict of not guilty to be entered, does not constitute a *general* verdict of not guilty, but amounts to a *special* verd.ct, and from the judgment thereon the State can appeal.

3. The practice in respect to the manner in which special verdicts should be rendered is stated.

INDICTMENT for unlawfully seizing and appropriating crops, tried at Fall Term, 1890, of the Superior Court of MONTGOMERY County, *Bynum, J.*, presiding.

The jury found the following special verdict:

"That in February, 1889, one S. T. Usher rented from the defendants in the county of Montgomery, the turpentine boxes on certain land belonging to the defendants in said county for the ensuing turpentine season; that the turpentine season ordinarily begins in the month of March and lasts until the following March; that said Usher in the month of September following paid to the defendants the rent he contracted to pay, it being a monied rent; that in December, 1889, defendants rented the land and the turpentine boxes for the year 1890 to another man; that prior to the 1st day of January, 1890, the said Usher had not taken from the boxes all of the turpentine of the running of the

season of 1889; that on the 14th day of January, 1890, the said Usher sent his hands to take from the said boxes the said turpentine and the hands were forbidden by defendants from taking the same, and in consequence of said forbidding they did not take the same; that there were about four barrels of turpentine left in the boxes of the crop of 1889 which had been produced by the labor of said Usher and his employees; that said Usher never did get the said turpentine in consequence of the forbidding of his hands by defendants to gather the same; that said Usher was not indebted to defendants or either of them for any advances made to him; that defendants did not get the turpentine, but that it was gathered by their tenant for the year 1890, the defendants received their rent from him."

Upon the special finding of facts by the jury, the Court being of the opinion that the defendants were not guilty so adjudged, and ordered a verdict of not guilty to be entered and gave judgment discharging the defendants; from which judgment, the Solicitor for the State prayed an appeal.

*The Attorney General,* for the State.

*Messrs. J. B. Batchelor* and *J. C. Black* (by brief), for defendants.

MERRIMON, C. J.: The statute (*The Code,* § 1754) prescribes that "when lands shall be rented or leased by agreement, written or oral, for agricultural purposes, or shall be cultivated by a cropper, unless otherwise agreed between the parties to the lease or agreement, any and all crops raised on said lands shall be deemed and held to be vested in possession of the lessor or his assigns at all times, until the rents for said lands shall be paid, and until all the stipulations contained in the lease or agreement shall be performed," etc., and it further gives the landlord and his assigns a civil rem-

edy prescribed in case the lessee, cropper .or the assigns, or either them, "shall remove the crop, or any part thereof," from the lands without the consent of the lessor or his assigns, etc. The same statute (*The Code*, § 1755) gives the lessee or cropper, or the assigns of either, a like civil remedy against the lessor or his assigns in case he or they "shall get the actual possession of the crop, or any part thereof, otherwise than by the mode prescribed in the preceding section," etc., and refuse upon notice "to make a fair division of said crop, or to pay over to such lessee or cropper, or the assigns of either, such part thereof as he may be entitled to under the lease or agreement," etc. These and other like statutory provisions extend to leases of turpentine trees. *The Code*, § 1762.

The purpose of the statute (*The Code*, § 1759), which makes it a misdemeanor on the part of the lessee or cropper, or the assigns of either, to remove the crop, or any part thereof, without the consent of the lessor or his assigns, etc., and likewise on the part of the landlord to "unlawfully, willfully, knowingly and without process of law, and unjustly, seize the crop of his tenant when there is nothing due him," etc., is to render the statutory provisions and regulations above referred to more effective, and this penal provision must be interpreted in that light and in that view. It embraces both the landlord and the tenant, and intends the more effectually to secure their respective rights as prescribed.

It appears that the prosecutor had leased turpentine trees from the defendants and made the crop, but had not gathered the whole thereof; that his term of lease was not over, but he was out of the possession of the trees and the land on which they were situate; that he had paid the defendants all the rents due them, and owed them nothing for advancements or expenses; that he sent his servants back to gather and remove the remaining ungathered part of the crop; that they went to do so and the defendants forbade them to gather the crop so remaining, and accordingly they did not; that

the defendants, before the prosecutor's lease was over, leased the same trees to tenants for the next ensuing year, and these tenants were allowed to take the balance of the prosecutor's crop and use it for their own purposes.

The defendants had possession of the land, the turpentine trees and the boxes in them containing the prosecutor's ungathered crop of turpentine. Such being the facts, clearly the prosecutor might have maintained his civil action, as allowed by the statute above mentioned, against the defendants to recover the ungathered part of his crop. The defendants had no shadow of right to detain it, or prevent the owner or his servants from gathering and removing it. We are also of opinion that the defendants, in the just sense and contemplation of the statute (*The Code*, § 1759), "unlawfully, willfully, knowingly, and without process of law, and unjustly," seized the crop of their tenant, the prosecutor, when there was nothing due them, and thereby committed a misdemeanor. They violated the spirit and certain purpose of the statute first above referred to, and did that which the penal provision just cited intends to prevent. They had possession of the turpentine trees, the boxes in them containing the ungathered crop of the prosecutor that he had a right to gather, and when they refused to allow his servants to gather the same they thereby manifested their purpose to, and did, in contemplation of the statute, "seize," take possession and control of such ungathered crop. The word "seize" is used in the sense of taking unlawful actual possession of the crop by force actually used or plainly implied. To constitute the offence, it is not necessary that the landlord shall take possession of the crop *manu forti*, or manual possession of it at all; it will be complete in this respect if he takes possession and control thereof in such way as prevents and excludes the tenant from gathering and removing his crop in a peaceable and orderly manner. This the statute intends he shall have the right to do.

The defendants asserted their purpose to have and take the exclusive possession when they forbade the prosecutor to remove his crop, and the latter, on that account, desisted from doing so. That such was their purpose was made the more manifest by the fact that they let the turpentine trees to other tenants and allowed them to take the prosecutor's remaining crop. .

We are, therefore, of opinion, that upon the special verdict, the Court should have decided that the defendants were guilty.

It was contended on the argument that an appeal did not lie in this case in favor of the State, because, as suggested, there was a verdict of not guilty. This contention is founded in misapprehension. It very obviously appears from the record that the jury intended to, and certainly did, render a special verdict embodying all the material facts of the case. This they did, and no more; and this it was their province to do. This verdict remains, and appears as part of the record, and the judgment of the Court is founded upon it. The jury could not go further and render two verdicts—one special and the other general—so that both might prevail at the same time. To do so would involve practical absurdity. The Court did not set the special verdict aside. It, in effect, simply decided that upon this verdict the defendants were not guilty, and gave judgment in their favor. The entry of the verdict " not guilty " was not the finding of the jury; it was the order of the Court upon the special verdict, and was not necessary—perhaps it might, ought, to have been omitted—as it served no useful purpose. *State* v. *Moore,* 7 Ired., 228.

On the argument it was brought to our attention that some confusion and inconsistency have prevailed in the numerous decisions of this Court in respect to special verdicts in criminal cases. We have examined the cases cited, and others, and upon mature consideration we think it better that, upon

the special verdict in a case, the Court should simply declare its opinion that the defendant is guilty or not guilty, and enter judgment accordingly. Indeed, the simple entry of judgment in favor of or against the defendant would be sufficient. This is substantially the practice as pointed out in *State* v. *Moore, supra.* It is plain and convenient, will prevent further conflict of decision, and should be observed.

Error.